**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alphonzo Rodgers,** | ) | **CASE NO. 1: 05 CV 2349** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **City of Cleveland, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**Introduction**

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 14). This case alleges race discrimination in employment. For the following reasons, the motion is granted.

**Facts**

Plaintiff, Alphonzo Rodgers, filed this lawsuit against defendants, City of Cleveland, the Police Department of the City of Cleveland[1], Chief of Police Edward F. Lohn, Commander

---

[1] Plaintiff agrees with defendants' assertion that the Cleveland Police Department is not a proper party. Police departments are not *sui juris* and, therefore, cannot

1

Michael McGrath and Lieutenant Gary McGinty. The Complaint, originally filed in the Cuyahoga County Common Pleas Court, was removed to this Court on the basis of federal question jurisdiction.

Plaintiff, a Cleveland police officer, sets forth a three count Complaint. Counts One and Two allege disparate treatment based on race in violation of Title VII and the Ohio Revised Code. Count Three alleges a violation of § 1983. The EEOC/Ohio Civil Rights Commission Charge of Discrimination, appended to the Complaint, states that beginning in January 2004 and continuing through October 21, 2004, plaintiff was suspended four times by Lohn, McGrath and McGinty, all white males, and on October 21, 2004, plaintiff was demoted from detective to patrolman.

Since July 2000, plaintiff had been employed by the City of Cleveland Division of Police as a detective in the Fourth District. At all relevant times, Lohn was Chief of Police, McGrath was Commander of the Fourth District and McGinty was a lieutenant and plaintiff's supervisor. Sergeant Ronald Lee (not a party herein) was also a supervisor of the Fourth District Detective Unit. On October 20, 2004, Lohn transferred plaintiff back to basic patrol. (Doc. 14 Ex. A)

Documentation submitted by defendants provides the following factual background.

**(1) First Suspension**

In January 2004, Chief Lohn conducted a pre-disciplinary hearing to determine if

---

sue or be sued. They are "merely sub-units of the municipalities they serve." *Jones v. Ptl. D. Marcum,* 197 F.Supp.2d. 991 (S.D.Ohio 2002) (citing *Williams v. Dayton Police Dept.,* 680 F.Supp. 1075 (S.D.Ohio 1987) ). *See also Messer v. Rohrer,* No. C-3-95-270, 1997 WL 1764771, f.n. 9 (S.D.Ohio March 31, 1997) ("The Court notes that the Defendant Police Department is not a proper party to this action, as it is not *sui juris.*")

2

plaintiff had violated rules and procedures. By letter of January 21, 2004, Lohn advised plaintiff that such a violation had occurred and that plaintiff was suspended for six days without pay, with two days held in abeyance. (Doc. 14 Ex. L) The incidents giving rise to the suspension were:

> **October 30, 2003:** Plaintiff arrived one hour late for his shift. McGinty asked him why he was late and why he did not call the office. Plaintiff ignored him. As a result, McGinty asked plaintiff to fill out a Pre-Structured Tardy Form explaining his late arrival. McGinty recommended disciplinary action and noted on the memorandum that plaintiff had been tardy on numerous previous occasions and intentionally ignored McGinty on several other occasions.
>
> **October 31, 2003- November 3, 2003:** Plaintiff ignored McGinty when the latter inquired as to whether plaintiff had completed the Pre-Structured Tardy Form. McGinty ordered plaintiff to complete the form and he did not. McGinty also returned plaintiff's October 30 duty report, instructing him to make certain corrections (including his arrival time). Plaintiff handed in the duty report on November 3, without making the corrections. McGinty again recommended disciplinary action.
>
> **December 5, 2003:** McGinty received a memo from the Inspections Unit advising that a GPO Notebook Inspection would be conducted on the morning of December 10, 2003. He randomly selected two detectives scheduled to work that morning. Plaintiff's name was selected. Upon learning of his selection, plaintiff informed McGinty in a loud and belligerent manner that he would not be there that day and accused McGinty of "picking on the day shift." Plaintiff then called in sick, missing the inspection. McGinty again recommended disciplinary action.
>
> **January 2, 2004:** Plaintiff ignored an order to complete a Pre-Structured Tardy Form after arriving one hour and 45 minutes late for work. He also refused to complete an Overtime Card. McGinty again recommended disciplinary action, noting thereon that plaintiff had also been late the previous day but received only a verbal warning.

(*Id.*)

### (2) Second Suspension

On August 2, 2004, following a pre-disciplinary hearing, Chief Lohn suspended plaintiff for two days without pay after determining that he allowed Lydia Alphabet to remain in custody for four days after the prosecutor had ruled that no charges were to be filed against her. (Doc. 14 Ex. N) Lieutenant McGinty (Caucasian) and Detective Joseph Daugenti (Caucasian) received the

3

same suspension for the same infraction.  (*Id.*)  Ms. Alphabet had filed a complaint with the Office of Professional Standards that was reviewed by the Police Review Board.  The latter concluded that Alphabet had been improperly detained and recommended the two-day suspensions for the officers.  (Doc. 14 Ex. M)

### **(3) Third Suspension**

On September 1, 2004, following a pre-disciplinary hearing, Chief Lohn suspended plaintiff for five days without pay, plus the two days that had previously been held in abeyance, after refusing to handle two cases assigned to him by McGinty.  (Doc. 14 Ex. B)

### **(4) Fourth Suspension**

On September 28, 2004, following a pre-disciplinary hearing, Chief Lohn suspended plaintiff for ten days without pay, with five days held in abeyance, after it was determined that plaintiff improperly assumed control of a domestic violence investigation and then failed to conduct "even a perfunctory investigation."   (Doc. 14 Ex. J) An Investigation Report prepared by the Internal Affairs Unit reveals that upon receiving a telephone call from the mother (whom plaintiff knew) of Charles Higgins, who had been arrested for domestic violence in the Fourth District, plaintiff improperly assumed control of the case.  The case had been assigned to the Second District Domestic Violence Unit as the alleged crime had occurred in that district.  Although plaintiff knew the case had already been assigned, he assumed control and then failed to conduct a proper investigation.  (Doc. 14 Ex. P; Ronald Lee aff.)

### **(5) Transfer**

On October 20, 2004, Chief Lohn informed plaintiff that he had been transferred **"**back to basic patrol due to his persistent failure to abide by the Rules and Regulations of the Cleveland

4

Police Department..." The conduct noted above was cited. (Doc. 14 Ex. A)

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th

5

Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

### (1) Race Discrimination (Counts One and Two)

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual ... because of such individual's race..."  The burden shifting analysis utilized to resolve claims of race discrimination brought under Title VII is well-established.  Absent direct evidence, the plaintiff must first set forth a prima facie case showing that:  1) he is a member of a protected class; 2) he was qualified for the job; 3) he suffered an adverse employment decision; and 4) he was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class. *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001), *Jones v. The Goodyear Tire & Rubber Co.,* 2000 WL 1434628 (6th Cir. Sept. 22, 2000).  Once the prima facie case has been made, the burden

shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Once the defendant satisfies this burden, the presumption of intentional discrimination no longer exists and the employee must then prove by a preponderance of the evidence that the defendant intentionally discriminated against plaintiff by showing that the legitimate reasons offered by the employer were mere pretext. *Hartsel v. Keys,* 87 F.3d 795 (6th Cir. 1996). Claims asserted under Ohio's anti-discrimination statute are analyzed in the same manner. *Sullivan v. Coca-Cola Bottling Co.*, 2006 WL 1407880 (6th Cir. May 18, 2006) (citations omitted)

With regard to plaintiff's prima facie burden, defendants assert that plaintiff fails to show that he suffered an adverse employment action or that non-minority employees were treated more favorably.

**(a) whether plaintiff suffered an adverse employment action**

Defendants argue that plaintiff did not suffer an adverse employment action because plaintiff was properly disciplined for violating workplace rules and the transfer back to patrolman was not a demotion. For the following reasons, this Court disagrees.

An adverse employment action is "a materially adverse change in the terms of ... employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir.2004) (citing *Kocsis v. Multi-Care Mgmt., Inc*., 97 F.3d 876, 885-87 (6th Cir.1996)). A "mere inconvenience or an alteration of job responsibilities or a bruised ego is not enough to constitute an adverse employment action." *Id*. (citation and internal quotation marks omitted). Further, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* A reassignment may be an adverse employment action if it constitutes a demotion evidenced by "a less distinguished title, a material loss of benefits,

7

significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Kocsis*, 97 F.3d at 886).

First, defendants assert that plaintiff was properly disciplined and, therefore, did not suffer an adverse employment action. Defendants point to *Williams v. AP Parts, Inc.,* 252 F.Supp.2d 495 (N.D.Ohio 2003). However, even that case recognized that discipline constitutes an adverse employment action when it involves suspension from work for several days or when suspension is without pay.

Plaintiff herein was suspended on four occasions. Each suspension was without pay. A suspension without pay amounts to an adverse employment action. *Smith v. City of Salem, Ohio,* 378 F.3d 566 (6th Cir. 2004), *Shohadee v. Metropolitan Government of Nashville and Davidson County,* 150 Fed.Appx. 402 (6th Cir. 2005).

Second, defendants assert that plaintiff's transfer back to patrol officer was not a demotion because the position of detective is not a rank, but only a posting. Further, defendants point out that plaintiff did not suffer any pay cut or reduction in other benefits as a result of the transfer. Finally, defendants assert that the transfer was justified.

As stated earlier, however, a reassignment which results in "a less distinguished title" may be considered an adverse employment action. *White,* 364 F.3d at 795. So too, a reassignment entailing a loss of prestige is sufficient. Clearly, the title of detective is more distinguished and prestigious than that of a patrol officer.

For these reasons, plaintiff satisfies this element of the prima face case.

**(b) whether plaintiff was treated differently from similarly situated members of the unprotected class**

Defendants assert that plaintiff can point to no similarly-situated non-minority employees

8

who received better treatment than plaintiff.  For the following reasons, this Court agrees.

In his affidavit, plaintiff avers, "White detectives would frequently have loud and angry cursing and shouting arguments with defendant McGinty which never resulted in them being brought up on charges."  (pltf. aff. ¶ 2(b) ) And, "[I]t was common for white detectives to frequently report late and/or leave early without being penalized for in their pay or by being disciplined."  (*Id.* ¶ 2(c) ) Plaintiff, however, does not identify these detectives and, therefore, the Court is unable to determine whether they are similarly situated.  Finally, plaintiff avers, "No white detective has ever been disciplined for not charging or not releasing a suspect within 72 hours when the case has not been assigned to them to my knowledge."  (*Id.* ¶ 2(f) ) Again, plaintiff identifies no specific individuals.  Moreover, as discussed below, plaintiff argues that he should not have been disciplined in the Lydia Alphabet incident because he was not assigned the case.  However, McGinty (Caucasian) received the same discipline as plaintiff, although he was not assigned the case.

For these reasons, plaintiff's general averments that white officers were treated better are insufficient.[2]

Plaintiff further avers that on one occasion Detective Steve Loomis, Caucasian,

---

[2] Plaintiff also asserts for the first time in his affidavit that, although he had seniority, he was twice passed over for a second shift assignment in favor of white officers.  Plaintiff provides no supporting documentation.  Nor does he identify the officers who presumably had less seniority than plaintiff, but received the second shift assignment.  Moreover, defendants submit the affidavit of Sergeant Ronald Lee, who had been assigned as a supervisor in the Fourth District Detective Bureau where he was in charge of the second shift.  Lee avers that detectives do not get to pick their shift assignments based upon seniority, as patrol officers do.  He also avers that plaintiff was offered a position on the second shift in 2004, but declined it.  (Lee aff. ¶ 2, 4)

"threatened to kick defendant McGinty's ass and he knocked all the stuff on his desk onto the floor and got into a physical altercation with McGinty that had to be separated by the Captain for which the white detective Loomis never was brought up on charges." (*Id.*)  Unlike Loomis, plaintiff asserts, plaintiff never threatened or engaged in a physical altercation with McGinty.

This averment fails to satisfy plaintiff's burden.  First, defendant submits the affidavit of Gerald Ruckgaber, a Captain in the Fourth District, who avers that at the relevant time he worked in the same office as McGinty.  On one occasion he witnessed Steve Loomis become angry upon seeing the numerous piles on his desk.  Loomis complained in a loud voice and threw items off his desk.  Ruckgaber told Loomis his actions were inappropriate and ordered him to pick the items off the floor.  Loomis complied.  Loomis's outburst was not directed at McGinty; nor did he engage in any behavior toward McGinty.  Plaintiff was not in the office when the incident occurred.  (Ruckgaber aff.)  Plaintiff does not controvert these averments.

Second, plaintiff does not show he was similarly situated to Loomis.  Where a plaintiff asserts that non-protected similarly situated employees received better treatment by defendant, he must demonstrate that employees with whom he wishes to compare himself are "similarly-situated in all respects, absent other circumstantial or statistical evidence supporting an inference of discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (quoting *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir.1992) ).  "This means a plaintiff must prove that all of the relevant aspects of his employment situation were nearly identical to those of the non-minority's employment situation." *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 479 (6th Cir. 2003) (citations omitted) and *Strong v. Orkand Corporation,* 2003 WL 22976654 (6th Cir. Dec. 8, 2003).  In particular, "as *Mitchell* instructs, a

10

plaintiff must identify a person who has the same supervisor, who was subject to the same standards of conduct, and who engaged in the same conduct without differentiating or mitigating circumstances." *Mallory v. Noble Correctional Institute*, 45 Fed.Appx. 463, 472 (6th Cir. Sept. 3, 2002).

Plaintiff makes no attempt to satisfy any of these requirements. Moreover, as defendants point out, plaintiff provides no evidence that Loomis had the same disciplinary history as plaintiff. At most, plaintiff points to a single incident in which Loomis was involved. Plaintiff's disciplinary history, on the other hand, involved several documented incidents.

For these reasons, plaintiff fails to satisfy his prima facie burden and summary judgment is appropriate as to his race discrimination claims.

**(c) pretext**

Assuming he has made a prima facie case, defendants have articulated legitimate, nondiscriminatory reason for suspending and transferring plaintiff, namely his insubordination and failure to follow rules and regulations.

Plaintiff offers several averments attempting to show that the disciplines were not warranted. Plaintiff may prove pretext by setting forth evidence "(1) that defendant's proffered reasons have no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1081 (6th Cir.1994) ). For the following reasons, plaintiff fails to establish pretext.

Plaintiff avers that he refused to sign a Tardy Form acknowledging that he was two hours late for work because he was only one hour late for work, and he made up for the hour by

11

working one hour late. (pltf. aff. ¶ 2(c) ) This averment presumably refers to plaintiff's discipline for arriving one hour and 45 minutes late for work. As defendants point out, however, this is a self-serving statement, unsupported by evidence to contradict the evidence submitted by defendants. At any rate, plaintiff ignores the other incident involving his tardiness. In *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 920 (7th Cir. 1996), the Seventh Circuit stated that when a defendant gives numerous reasons for the adverse action, plaintiff must raise an issue of fact regarding each of the reasons and the fact that some of the reasons "were successfully called into question" does not defeat summary judgment if at least one reason "stands unquestioned." The Sixth Circuit has cited *Wolf* favorably although not in reference to this specific point. *Blair v. Fullbach Services, Inc.,* 2000 WL 1359655 (6th Cir. September 15, 2000).

        Plaintiff also avers that the notebook inspection "was cancelled anyway and I was out sick on that day." (pltf. aff. ¶ 2(d) ) As defendants argue, however, the fact that the inspection may have been cancelled does not negate the fact that plaintiff previously communicated his refusal to participate by threatening to call in sick and that he did so.

        Plaintiff avers that he did not have the responsibility to release Ms. Alphabet because the case had not been assigned to him. (pltf. aff. ¶ 2(f) ) Plaintiff fails to acknowledge that while the case was also not assigned to McGinty, a Caucasian, he received the same discipline as plaintiff. Morever, plaintiff does not counter the evidence demonstrating his own involvement in the case which contributed to the confusion resulting in the improper detainment of Ms. Alphabet. (Doc. 14 Ex. K)

        Finally, plaintiff summarily avers that he was assigned the Charles Higgins domestic violence matter. Plaintiff, however, fails to address Sergeant Ronald Lee's affidavit which

12

explains that the case had been assigned to the Second District, where the incident occurred, due to the clear policy of the Division of Police. Additionally, the matter was assigned to the Domestic Violence Unit in the district, staffed by detectives specifically assigned to investigate domestic violence cases. Plaintiff was a detective assigned to the general unit which did not handle domestic violence cases. (Lee aff.) Furthermore, Sergeant Lee prepared a contemporaneous memorandum concluding that plaintiff improperly assumed control of the case when he violated these well-known procedures. The Internal Affairs Unit report also concluded that plaintiff had no justification to assume control of the investigation. (Doc. 14 Exs. I, O and P)

Plaintiff's conclusory averment is insufficient to contradict defendants' evidence and, therefore, fails to raise an issue of fact. *See Bell v. Ohio State University,* 351 F.3d 240 (6th Cir. 2003) (Where a summary judgment motion is made and supported as provided in Rule 56, a conclusory affidavit which fails to set forth specific facts showing a genuine issue for trial is insufficient to defeat summary judgment.); *Smith v. County of Hamilton*, 34 Fed.Appx. 450, 455 (6th Cir. 2002) (citations omitted) (Conclusory statements in the plaintiff's own affidavit are not sufficient to defeat a summary judgment motion supported by evidence.); *Hollowell v. Michigan Consolidated Gas Co.*, 18 Fed.Appx. 332, 338 (6th Cir. 2001) (An affidavit containing a recitation of conclusory allegations without any factual detail is insufficient to create a genuine issue of material fact.); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69-70 (6th Cir.1982) (To defeat an otherwise supported motion for summary judgment, affidavits must contain more than conclusory allegations).

Even assuming the statement in plaintiff's affidavit is sufficient to create an issue of fact

as to the basis of plaintiff's fourth suspension, plaintiff has not raised issues of fact as to his first and second suspensions, as discussed herein.  Nor does plaintiff attempt to refute the basis of his third suspension arising from his refusal to handle two cases assigned to him by his supervisor.

Based on the foregoing, plaintiff fails to demonstrate that his suspensions and transfer were a pretext for race discrimination.

Because plaintiff fails to establish a prima facie case or pretext, summary judgment is warranted as to Counts One and Two.

**(2) Section 1983**

Count Three alleges that defendants' conduct in disciplining and transferring plaintiff violated 42 U.S.C. § 1983.  Plaintiff's brief (in one paragraph) asserts that plaintiff's disciplines were pursuant to the City's rules and regulations and, therefore, the City can be held liable based on the implementation of these rules.

A municipality may be liable for a constitutional violation caused by individuals when those individuals acted pursuant to an official policy of the municipality. *See Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). For municipal liability to exist, however, a constitutional violation must take place. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir.2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.")

Nowhere does plaintiff's Complaint reference a Constitutional violation.  Moreover, the Court has concluded that plaintiff fails to demonstrate that his suspensions and transfer were based on discrimination.

**<u>Conclusion</u>**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

      IT IS SO ORDERED.

                                  /s/ Patricia A. Gaughan
                                PATRICIA A. GAUGHAN
                                United States District Judge

Dated:   8/14/06